```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA

              -against-

Thomas Earl Little II,

                              Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/26/2025_____

24 Cr. 452 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Thomas Earl Little II, stands accused of committing five violations of the conditions of his supervised release in connection with a July 28, 2024 traffic stop in Jefferson County, Idaho. For the reasons stated below, the Court finds, by a preponderance of the evidence, that Little committed all but one of the charged violations.

## BACKGROUND

After pleading guilty to conspiracy to transport illegal aliens for profit, 8 U.S.C. § 1324(a)(1), Little was sentenced in May 2022 to twenty-one months' imprisonment followed by three years of supervised release. *See generally* ECF No. 2. His term of supervised release began in July 2023. Violation Report at 2.[1]

Little is accused of committing five violations of his conditions of release, all stemming from the July 2024 traffic stop.[2] *See id*. at 3–4. Specifications 1 and 4 allege that Little committed the crimes of unlawful possession of a firearm and being a felon in possession of a firearm, respectively, in violation of Idaho Code § 18-3316 and 18 U.S.C. § 922(g)(1). *Id*. at 3. Specification 3 alleges that Little possessed a firearm. *Id*. Specification 2 alleges that Little

---

[1] Citations to the Violation Report are to the Request for Warrant dated August 1, 2024.

[2] Although the Violation Report accuses Little of six violations, the Government does not proceed on Specification 6. ECF No. 27 at 2; ECF No. 43 at 1.

committed the crime of possession of a controlled substance in violation of Idaho Code § 37-2732(c)(3). *Id*. Finally, Specification 5 alleges that Little left the judicial district without permission. *Id*.

The Court held an evidentiary hearing on the specifications on January 27 and 28, 2025. The Government called Idaho State Police Officer Justin Ward, who conducted the traffic stop. The Court credits his testimony. In addition, the parties presented video footage of the incident. Specifically, the parties showed clips from two full-length videos: One video, taken from Officer Ward's front-facing dashboard camera, captures the traffic stop and subsequent search of the car; the other, taken from an interior camera in Officer Ward's patrol car, captures the back seat of the patrol car.[3] *See* Gov't Exs. 201-A–E, 202-A–D; Def. Exs. A-1–9, B-1–4.

Officer Ward testified that, on July 28, 2024, he stopped a car driven by Gregory Bolden for speeding. Hearing Tr. 1 at 17:5–14, ECF No. 38. Little was seated in the front passenger seat. *Id*. at 17:12. After approaching the car from the front passenger side and smelling a "strong odor of marijuana coming from the vehicle," *id*. at 17:17–21, Officer Ward instructed Bolden and Little to exit the vehicle and informed them that he would search the car, *id*. at 18:25–19:3, 20:2–3. Officer Ward began by searching the front passenger side, *id*. at 21:20–22:2, recovering "a bag that contained marijuana" from the passenger side door, *id*. at 22:11–12. Bolden told Officer Ward that the bag was his. Hearing Tr. 2 at 80:15–23, ECF No. 40.

Officer Ward then searched the back seat of the car, where he found a duffle bag containing, among other things, marijuana. *See id*. at 49:8–13, 62:24–25. As with "almost everything [else] in the car," Bolden told Officer Ward that the duffle bag belonged to him. *Id*.

---

[3] In an oral order, the Court explained why it admitted the video clips as well as certain out-of-court statements. Hearing Tr. 1 at 3:23–5:23, ECF No. 38. The Court also admitted Idaho's motion to dismiss its related case against Little, as well as the Idaho court's order dismissing the case. *See id*. at 5:24–7:2.

2

at 48:24–49:17.  Officer Ward then detained Bolden and Little, handcuffing and placing them in the back seat of his patrol car while he continued searching the vehicle.  Hearing Tr. 1 at 25:3–14; Hearing Tr. 2 at 64:10–14.  He recovered a .45 caliber pistol from under the driver's seat, a .22 caliber pistol from under the passenger's seat, and two shotguns from the trunk.  Hearing Tr. 1 at 33:19–24, 35:2–4, 36:4–12.  Bolden claimed ownership of all firearms.  *Id*. at 37:25–38:4; Hearing Tr. 2 at 73:24–74:13.

The Government has the burden to prove each essential element of each specification by a preponderance of the evidence.  *United States v. Peguero*, 34 F.4th 143, 152 (2d Cir. 2022).  "The preponderance standard requires proof that the defendant's violation of supervision was more likely than not."  *Id.* (quoting *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir. 2016)).  Little contests all five specifications.  *See generally* Def. Mem., ECF No. 42; *see also* Gov't Mem., ECF No. 43; Def. Reply, ECF No. 45; Gov't Reply, ECF No. 44.

**FINDINGS OF FACT**

I.     Specifications 1, 3, and 4

Specifications 1, 3, and 4 relate to Little's alleged possession of a firearm.  To prove Specification 1, unlawful possession of a firearm in violation of Idaho Code § 18-3316, the Government must demonstrate that Little (1) was "previously . . . convicted of a felony," and (2) "purchase[d], own[ed], possesse[d], or ha[d] under his custody or control any firearm."  To prove Specification 3, the Government must demonstrate that Little possessed a firearm in violation of standard condition 10 of his terms of supervised release, which prohibits Little from "own[ing], possess[ing], or hav[ing] access to a firearm."  ECF No. 2 at 3.  Finally, to prove Specification 4, felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the Government must demonstrate "(1) knowing possession of [a] firearm . . . , (2) a previous felony

3

conviction, and (3) the possession being in or affecting commerce." *United States v. Amante*, 418 F.3d 220, 221 n.1 (2d Cir. 2005) (citation omitted).

For each of the three specifications, Little challenges only the element of possession. Def. Mem. at 1; *see also* Gov't Mem. at 5. To prove this element, the Government must establish that Little knowingly possessed a firearm.[4] *See U.S. v. Harrington*, 370 F. App'x 216, 218 (2d Cir. 2010); *State v. Dolsby*, 145 P.3d 917, 920 (Idaho Ct. App. 2006). The Government may do so by showing actual or constructive possession. *See United States v. Figueroa*, 822 F. App'x 7, 11 (2d Cir. 2020); *State v. Maland*, 861 P.2d 107, 112 (Idaho Ct. App. 1993). To establish constructive possession under federal and Idaho law, the Government must demonstrate that Little "knowingly ha[d] the power and the intention at a given time to exercise dominion and control" over a firearm. *United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016) (citation omitted); *see State v. Garza*, 735 P.2d 1089, 1095 (Idaho Ct. App. 1987). Constructive possession "may be shown by direct or circumstantial evidence," and possession need not be exclusive. *United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002) (citation omitted); *see Garza*, 735 P.2d at 1095–96.

The Government argues that there are "four reasons . . . that demonstrate, by a preponderance of the evidence," that Little knowingly possessed at least one firearm. Gov't Mem. at 5. First, the Government points to Little's behavior while he and Bolden were detained in the back seat of Officer Ward's patrol car. *See id.* at 5–6. Before Officer Ward informed them that he had found firearms in the car, Hearing Tr. 2 at 46:2–24, a video clip shows Bolden asking Little, "Is that thing still in the car? . . . That you had?," Gov't Ex. 202B at 1:46–54.

---

[4] The Court applies the "knowing possession" standard to Specification 3, which charges Little with possessing a firearm in violation of the terms of his supervised release.

Little responds by making a hand gesture that simulates a gun, to which Bolden replies, "No, not that." *Id*. at 1:52–55. Little then shakes his head "no." *Id*. at 1:55–58. According to the Government, by making a gun gesture in response to Bolden's question of whether the "thing . . . [Little] had" was still in the car and replying to Bolden's question only after Bolden clarifies that he was not referring to a gun, Little admitted knowing possession of at least one firearm. Gov't Mem. at 6.

Second, the Government points to a video call Little made from his cellphone to an unidentified person while Little was detained and handcuffed in the rear of the patrol car. *Id*. at 6–7; Gov't Ex. 202D at 0:01–22. When the recipient picks up, Little holds a finger to his mouth, indicating to the individual that they should remain silent. Gov't Ex. 202D at 0:21–23. Little twice uses his phone camera to show the caller that he is in handcuffs and to show the caller the view through the windshield, where Officer Ward could be seen conducting his search of Bolden's car. *Id*. at 0:23–56. Little then points the camera to himself, makes repeated gun gestures with his hand, and holds up four fingers. *Id*. at 1:20–30.

Third, the Government points to a second interaction between Bolden and Little while they both were detained in the patrol car. Gov't Mem. at 8. A video clip shows Little typing on his phone before showing Bolden the phone. Gov't Ex. 202B at 2:04–3:33. After looking at the phone, Bolden tells Little, "I'll take charges for all the guns." *Id*. at 3:30–3:33. Little again types on his phone and shows Bolden the phone, to which Bolden again responds, "I'm taking all the charges." *Id*. at 3:33–4:02. According to the Government, "[t]he fact that there was an apparent negotiation over who would 'take the charges' for the [f]irearms [is] further evidence that [Little] had at least shared possession" of the firearms. Gov't Mem. at 8 (emphasis omitted).

5

Finally, the Government points to how the .45 and .22 caliber pistols were found in the vehicle. Officer Ward recovered the firearms from under the driver's seat and front passenger's seat, respectively, and found both firearms with their handles facing the front of the car and their barrels toward the back of the car. Hearing Tr. 1 at 34:4–23, 36:4–37:17; Hearing Tr. 2 at 71:22–23. According to Officer Ward, this suggests that Bolden and Little stuck the firearms between their legs under their seats. Hearing Tr. 1 at 34:4–23.

The Court finds that the Government has proven, by a preponderance of the evidence, that Little knowingly possessed at least one firearm. Little does not dispute his interactions with Bolden, the video call, or the placement of the firearms. Instead, he argues that the Government has only shown his physical proximity to the .22 caliber pistol, that his "gestures and actions are wholly insufficient to establish" that he knowingly possessed a firearm, and that Bolden claimed ownership of the firearms. Def. Mem. at 2–11. The Court disagrees.

Although it is true that "[m]ere proximity or presence is . . . insufficient to support a finding of constructive possession," *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004), the Government's evidence establishes more than mere proximity. As discussed above, video footage from the patrol car's interior camera clearly shows Little making a gun gesture in response to Bolden's question of whether what Little "had" was still in the car, before Little knew that Officer Ward had found firearms in the vehicle. Little also called an unidentified individual and made repeated gun gestures to that person, and he appears to have discussed with Bolden who would take the gun charges. Little argues, without pointing to any evidence, that "[t]he most logical inference" from these interactions is that, shortly after being stopped by Officer Ward, Bolden informed Little, for the first time, of the guns in the car. Def. Mem. at 10. The Court, however, agrees with the Government that, were this true, it would not explain why,

6

when Bolden asked Little what Little had in the car, Little responded by making a hand gesture simulating a gun, indicating that he sought to clarify whether the question referred to a gun. *See* Gov't Mem. at 4. To the contrary, Little's response substantiates that he knowingly had the power and the intention at a given time to exercise dominion and control over a firearm that was still in the car.

That Bolden claimed ownership of the firearms is immaterial given Little's actions in the patrol car and Bolden and Little's apparent discussions about the gun charges. Possession, furthermore, need not be exclusive. *See Gaines*, 295 F.3d at 300; *Garza*, 735 P.2d at 1095–96. Here, the totality of the evidence—Little's actions, his interactions with Bolden, and the placement of the firearms found in the front of the car—establishes that it is more likely than not that Little "knowingly ha[d] the power and the intention at a given time to exercise dominion and control" over a firearm. *Facen*, 812 F.3d at 287 (citation omitted); *see Garza*, 735 P.2d at 1095. Accordingly, the Court finds, by a preponderance of the evidence, that Little committed the violations charged in Specifications 1, 3, and 4.

II.     Specification 2

To prove Specification 2, unlawful possession of a controlled substance in violation of Idaho Code § 37-2732(c)(3), the Government must demonstrate that Little possessed marijuana. As with the firearm, the Government may establish actual or constructive possession. *State v. Southwick*, 345 P.3d 232, 237 (Idaho Ct. App. 2014). Under Idaho law, "[c]onstructive possession of a controlled substance exists where a nexus between the accused and the substance is sufficiently proven so as to give rise to the reasonable inference that the accused was not simply a bystander but, rather, had the power and intent to exercise dominion and control over the substance." *Id*. "[C]onstructive possession cannot be inferred from the mere fact that the

7

defendant occupied, with [another person], the vehicle in which the drugs were seized." *Id*. "Indeed, where joint occupancy is involved, substantial evidence must exist establishing the guilt of each defendant, not merely the collective guilt of both; proximity alone will not suffice as proof of possession." *Id*.

The Government claims that Little constructively possessed the marijuana found in the front passenger door. Gov't Mem. at 9. In support, the Government points to the location of the marijuana, the marijuana smell identified by Officer Ward, and Little's actions, described above, while in the patrol car. *Id*.

The Court finds that the Government has not established, by a preponderance of the evidence, that Little had constructive possession of the marijuana. The location of the marijuana and the smell identified by Officer Ward go only to Little's proximity to the marijuana. But "proximity alone will not suffice as proof of possession," especially when joint occupancy is involved. *Southwick*, 345 P.3d at 237. And, contrary to Little's gestures with respect to the firearms, no such behavior links him to the marijuana found in the car. The Court, therefore, rejects the Government's argument that Little's actions in the patrol car, which the Court finds significant as they pertain to the firearms, should be interpreted to also suggest that he possessed the marijuana. Accordingly, the Court finds that the Government has not proven Specification 2 by a preponderance of the evidence.

III. Specification 5

Specification 5 states that Little left the judicial district on or before July 28, 2024, without the permission of the Court or his probation officer. Violation Report at 3. Because it is undisputed that Little did not have the Court's permission, the Government must establish only that he did not have the probation officer's permission.

In support of Specification 5, the Government provides a 37-page chronological report put together by Probation Officer Matthew Omlor, who supervised Little during the relevant events. *See generally* Gov't Ex. 402. In his report, Officer Omlor describes, *inter alia*, Little's authorized travel from July 2023 to January 2025, which appears to be limited to the tri-state area. *See, e.g.*, *id*. at 4, 16–17, 20–21, 23, 25. The report does not suggest that Little ever sought or received authorization to travel to Idaho.

Little argues that the Government has not established that he traveled to Idaho without permission because the chronological report "demonstrates an understanding" that "at least some out-of-district travel was allowed," and the Government did not call Officer Omlor to testify at the hearing. Def. Mem. at 12–13 (emphasis omitted). The Court disagrees. First, although the Government did not call Officer Omlor to testify, in the Violation Report, which Officer Omlor prepared, he clearly states that Little "traveled to Idaho without permission." Violation Report at 3. Second, although the chronological report does suggest that some out-of-district travel was allowed, in each instance such travel was limited to the tri-state area. Accordingly, the Court finds that the Government has proven, by a preponderance of the evidence, that Little left the judicial district on or before July 28, 2024, without Officer Omlor's permission.

9

**CONCLUSION**

For the foregoing reasons, the Court finds that Little violated his supervised release with respect to Specifications 1, 3, 4, and 5, but not with respect to Specification 2. Sentencing is scheduled for **March 31, 2025**, at **2:00 p.m.** in Courtroom 15D of the United States Courthouse, 500 Pearl Street, New York, New York 10007. By **March 10, 2025**, Little shall file his sentencing submission. By **March 17, 2025**, the Government shall file its sentencing submission.

SO ORDERED.

Dated: February 26, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge